I will call the first case. Consolidated Case 10-2228 and 10-2252 International Securities Exchange v. Chicago Board Options Exchange LLC Would the lawyers step up who are going to argue and tell us who you are? I think we know who you are, but it would be nice to have you reintroduce yourselves. Good morning, Your Honor. My name is Andrew Deutch, and I represent the International Securities Exchange. Deutch. Your Honor, my name is William Dixon on behalf of the Options Clearing Corporation, and we just want to inform the court we will waive oral arguments. All right. The other appellant can take the entire time. Very well. Thank you. Counsel, you are? Paul Dangle on behalf of CME Group Index Services and Chicago Board Options Exchange. Gentlemen, you have 15 minutes. You have 15 minutes. I just want to introduce myself. I'm Benjamin Marks, and I'll be speaking on behalf of McGraw Hill Companies and the Standard & Poor's Financial Services System. You will be addressing the court? I will. Okay. Very good. You're going to split your time? We are. Okay. Your Honor, may I ask one question? Sure. Does the 15 minutes include a lot of time as well? Yes, generally speaking, although we're not... This particular division does not really hold the lawyers to the exact 15 minutes. I don't use the call button or anything like that. But if you do run seriously over, we'll remind you. Thank you, Your Honor. Thank you. May it please the Court, and good morning. I'm Andrew Doidge, representing the primary appellant, the International Securities Exchange. The fundamental error of the court below was failing to recognize that this case, these claims, are in the wrong court and being decided under the wrong body of law.  Why don't we stop right there, because it certainly didn't start in the wrong court. It was at one point in the court you believe was the correct court. That's correct, Your Honor. We started a declaratory judgment action in New York, which was in state and is still pending. There was an issue, I think, of precedence over which case would proceed further. Well, in terms of when it was filed, the New York court action was filed first. And if we're going to infer anything from the court's decision to stay that New York action, we might infer that they were looking for the decision here in Illinois to decide which way to decide that case. Well, it's certainly the case that the issue of preemption is now before this court and not in front of it. Well, I was referring to the action that you filed in the Northern District. Well, that, Your Honor, is a ruling on a motion to remand, and it has no effect on this court. It has no estoppel effect, and we think it has no persuasive effect. But you certainly presented the argument that the Northern District was the correct court to decide the preemption issue. No. What we said was that the case should be – that there was federal jurisdiction in the case. Our intention was then to have the federal court state the action. We didn't get to that point because the plaintiffs filed a motion to remand. We never believed the case was properly in Illinois, Your Honor. Moving forward, it was and is the intention of Congress to have a national and uniform body of law decide the claims that are being asserted in this case. And that's why we have a broad and express preemption provision, Section 301A of the Copyright Act. Not only did the Congress say that it has to be interpreted uniformly, but the Illinois Supreme Court has said the same thing in Peeble v. Williams. And I will note the quote that you say must give considerable weight to such federal decisions on copyright preemption based on Williams.  And that's what triggered my original inquiry regarding if there's a deference to be given, you would think that the action that was filed in the Northern District would have been a decision to give deference to. Well, we have, I think, shown in our brief – I don't want to spend too much time on why that decision was wrong. As you know, we had no right to appeal from it to the Seventh Circuit. And as this Court knows better than most, the role of appellate courts are to correct the errors that the courts blow. We didn't have that opportunity. That's why it has no collateral estoppel effect. But our briefs show the broad array of federal precedent that the Northern District Judge ignored, simply didn't mention, didn't deal with, didn't distinguish. Those are the federal cases. What about the Illinois Supreme Court case that the Circuit Court deemed was on all fours? That is the Board of Trade case. What our position is here is that the Board of Trade establishes a misappropriation cause of action, which, like misappropriation causes of action in many, many other states, is on these facts preempted. We're not saying it's wrong. We're not saying that it has to be overruled. We're saying that Congress decided that on these particular facts, it is national copyright law and not the law of the individual 50 states that governs. Let's say you were saying it was wrong, and let's say you were saying it should be overruled. We certainly aren't the court to address either of those, are we? No question about that, Your Honor. So why isn't the Board of Trade responsible? It's not dispositive in the same way that all the other misappropriation, dozens and dozens of states have misappropriation. Can we rule in your favor and not come in conflict with the Board of Trade? Absolutely, Your Honor. You do not have to say the Board of Trade was wrongly decided. All you have to say is… Distinguish this case from… I'm not going to guess why. I have my own points. It wasn't raised by any of the parties, so it wasn't decided. So you're certainly not foreclosed by Board of Trade, as any other court has been in ruling that misappropriation claims are preempted. I'm sorry, Your Honor. Did you have something to say? There is no question about that, Your Honor, but that is true for the misappropriation law of every other state in every other claim where it's been overruled. And take People v. Williams. There, the Illinois Supreme Court preempted a duly enacted law of the Illinois legislature, which perhaps is even higher in the hierarchy. I don't know if you're acquainted with the appellate court decision, but the appellate court decision came from this panel. Yes, I am, in fact, acquainted with the appellate court decision. But if I may proceed, we are not asking you to overrule. We are asking you to follow, as People v. Williams suggests you must, the vast authority of federal cases, which hold, first, that the subject matter of this claim is material that's within the general realm of copyright. We've had some argument in the briefs as to whether the case is about index values, which we think it is because those are the values that actually define what an index option is. They define what it is that ISE would be doing if it were permitted to list these index options. Or the plaintiffs have argued, oh, no, it's about indexes, not index values. But as the recent Banks Corp. decision out of the Southern District says, both of those are within the subject matter of copyright. Both of them meet the subject matter requirement. Indexes are fixed. They are created. And the subject matter requirement, as People v. Williams recognized, and as many federal courts have also recognized, is broad enough to encompass the indexes. And the plaintiffs' complaint, the plaintiffs' briefs in this court, all say they're misappropriating our indexes. That, we think, based upon the Banks Corp. case and the generally broad interpretation that federal courts give to the subject matter requirement, means that the first of the two prongs of the misappropriation test is satisfied here. I think we've illustrated in our brief why we think it's about index values. That values define what an index option is. That they're used to determine the value. That traders don't trade index options if you can't copy and use the index value for settlement. And that when the federal courts have addressed this issue, although they haven't answered it, they've always phrased the question as whether there's a property right in these indexes. The plaintiffs admit the index values are in the public domain and the circuit court acknowledged that they're in the public domain. So I want to turn to the second prong of the preemption test, the one that was recognized in Williams and that has been recognized in many, many federal cases. And that's the equivalency prong. The burden falls on the plaintiffs in a preemption case to show you that there is an extra element in their misappropriation claim that qualitatively distinguishes it from copyright infringement. And we already have an answer at the case directly on point. That's the Nash decision out of the Northern District of Illinois, which was affirmed by the Seventh Circuit, unlike the case decided in the earlier phases. And that decision said very plainly, the Board of Trade, the misappropriation claim recognized in Board of Trade, is equivalent to copyright infringement, that it pursues the same goals and that it does not have any distinguishing characteristics from copyright infringement that would remove it from preemption. Let's say there is preemption. What happens then? Well, we have that declaratory judgment action in New York. We would go back to that court and say, lift your stay. The Illinois case has been dismissed. And let's now decide whether or not the plaintiffs have their claim under the only governing body of law, which is copyright law. And we would then brief that issue and the court would decide it. So basically what you want us to do is to remand this to the circuit court with directions to dismiss their lawsuit. That is correct on the grounds that it is preempted and the federal supremacy requires it. That is the primary relief that we are asking for. And that's what would happen. And then we would brief whether this case is like the NYMEX case, which we think it is. If there is a case that is on all fours with this case, it's the New York Mercantile Exchange v. ICE case, which was a copyright case and illustrates how this case, with just a change of label on the complaint, could have been pled as a copyright case. That also was an exchange publishing settlement values that were used to offer derivatives, in that case crude oil derivatives. And a competitor exchange did what ICE wants to do. It copied those published values. But if we dismiss this case and direct the circuit court to dismiss it, what's their remedy? Well, their remedy is, we think their remedy is, I will tell you what we will do and I'll represent to the court, that if you dismiss the case, we will ask the New York Southern District Court to lift the stay. It was only stayed until this court, the Illinois courts, decided. And we will then have a final decision because we will ask the court to grant summary judgment determining that they don't have rights under copyright law either. That's the NYMEX case. We think this case is just like the NYMEX case and that we have, my client has the right to use these published values to offer these derivatives. We think that's a question that has been answered under copyright law and because of preemption can only be answered. But they're not without an option. They won't lose their day in court. But let me make sure because it seemed that in your brief you were seeking an alternative remedy. You, in fact, were seeking a trial in the state court as opposed to a dismissal. And so why don't we clear up your position? Are you saying that the issue you are presenting to us is a question of law? Yes. Or are there embedded material questions of fact that need to be resolved before we can resolve the question of law? Preemption is a pure question of law. Every federal court to decide, and your review is... So the situation is either it's dismissal, which would reinvigorate the federal lawsuit in New York. That's correct. Or we affirm. It's either dismissal or, well, we've made a third argument, which is that it should be decided under New York law. But I think we can rely on our briefs for that point. If the court finds that it's not preempted and the court finds that New York law doesn't apply and require dismissal, then yes, our tertiary argument, if you want to put it that way, is that there are disputed questions of fact going to the application of Board of Trade in this case and that we have an entitlement to a trial. But that's obviously not what we wanted to... But that certainly was... the way this case got here was on cross motions or some...  That's correct. And cross motions for summary judgment generally put to the court that the only question before it is one of law. Well, we... our motion for summary judgment was that the case had to be dismissed either because of preemption or because of the application of New York law. Theirs was the Board of Trade applies and that they win. And our rebuttal to that, our opposition to that was that if it's not preempted and New York law doesn't apply, then we have entitlement to a trial and they're not entitled to summary judgment. So I don't believe we have conceded as to the points in our motion. Well, I don't understand that argument because either you're moving for summary judgment or you're withdrawing your motion for summary judgment and seeking a trial instead in light of their motion for summary judgment. Or unless you filed a separate motion, but I don't see a separate motion other than the motion for summary judgment. Well, I'm going to say procedurally, Your Honor, I'm not absolutely following you. We did move for summary judgment on two pure issues of law, saying there is no... Well, my point is that it seems to me that if you're going to move for summary judgment, the other party moves for summary judgment, it belies your motion for summary judgment to say, oh, but in the event we lose, we want a trial. I mean, everybody says that, but it doesn't mean that you're entitled to that. Well, I don't, you know, Your Honor, I would disagree. We think that the questions are, that this case, that the court effectively has no jurisdiction because this claim is preempted. That is our primary argument. But our argument is that if, and it's stated in the alternative, so I don't think there's a contradiction between the two positions, if the court were to reject our summary judgment motion, which the circuit court did, then if this issue is governed by Illinois law and governed by a Board of Trade, that there are, as to that realm, disputed issues with that, and that they are not entitled to summary judgment under Wells Subtle. All right. Let me just proceed very briefly with the preemption point because I think that there are some misstatements in the plaintiff's brief that need to be cleared up here. This is not about intangibles such as the right to publicity that was involved in the Tony case. This case is about index values, indexes that are written down. They're fixed. And one reason for the application of preemption law is there has to be fixation. They publish their values and they publish their indexes. So while someone's persona may float around in the air, so to speak, and not be fixed, that's not true of their values. So the Tony case is simply not applicable. Nor is the plaintiff's attempt, and they are not the first ones to try this, to evade preemption by saying, we're not suing about the copying. We're suing because you're taking the time, money, effort, and labor that went into our creation of these indexes and indexes. Many, many plaintiffs have tried. That's their theory. Yeah, but many plaintiffs have tried it and the courts have said, you can't get around Congress's broad preemption that way. Every author puts time, money, and effort into creating something. Every author's reputation is in some way imbued in his work. And if that were enough to avoid preemption, there would be no preemption. So the courts have consistently said, you can't get around preemption by arguing that you're not suing about copying and use, but about using my efforts, using my investments, or profiting from my reputation. We've cited the cases. One of the leading cases in this area, the Strombeck decision from the Sixth Circuit, called that very argument sophistry, and it is. They said, well, we're not complaining about the copying, we're complaining about the use. But again, the courts have said time and time again, if the use follows on the copying, if you're using it because you copied it first, that doesn't matter, it's still preempted. I do want to come back in closing on the preemption point to the NIMEX case. I believe that the plaintiffs have no answer to it. The Circuit Court didn't deal with it at all. That is a copyright case in which every element, every aspect of the plaintiff's pleading is the same as these plaintiffs' pleadings. They argued that their settlement values were the product of their creativity and judgment, of investment, of great money, time, and effort, and they were trying to stop another exchange from using those published values to create and offer derivatives, just as ISE intends to do if it prevails in this case. That was a copyright case, and that shows you how easily these plaintiffs, if they weren't trying to avoid federal preemption, could have gone into federal court and pled their case as a copyright case. Now, they may not win, but preemption doesn't say we only preempt cases that will be winners if they're asserted as copyright cases. Here's the question that comes to mind based on what you just stated, that they may not win. Because if your argument is that their cause of action falls under copyright law, and it is preempt, and their misappropriation cause of action is preempted based on that copyright law, why shouldn't they win? Because that's what Congress wanted. What the NYMEX case says is that Congress wanted certain things, information, to be in the public domain, and they didn't want the states, any state, I'm not just talking about Illinois, to take it out of the public domain. And if, in fact, the case... So it's not a copyright action then? No, it absolutely is a copyright action. It is a copyright action. It is a copyright. What happened in NYMEX was the court said that these values are in the public domain and anybody can use them. And that is what we are... I mean, when we get to federal court, if the court rules in our favor, we're going to make the same argument. Why? We're going to say that... But we think that as national uniformity goes, the NYMEX case illustrates why this case has to be preempted. How can it possibly be that the ICE, the other exchange, is entitled to use these published values and compete because copyright law permits it, but one state's law says you can't do the same thing. That copyright preemption exists so that there's one uniform national rule. And considering that we are talking about national exchanges that function across the country, where the traders are located across the country, there is a real imperative for this national body of law and not any single state's law to be the governing body of law. I'll just pass very quickly. As I said, we're going to rest on our briefs on the choice of law issue. We think it's well illustrated there. I want to pass briefly to the question of... Very briefly. On the question of what if you rule against us on preemption. We think that the precedents in the state make very clear that if this were to be decided under Illinois law, we're entitled to withdraw. This case turns on expert testimony. The Board of Trade didn't decide these issues forever and ever. Our precedents only to the extent of the facts in those cases. And the facts today, in 2011, are light years away. Markets are different. The nature of indexes are different. But why would we need a trial to resolve those sort of issues? Because the balancing test that exists... Why would a court of review need a record to decide what appears to be a question of law? It turns... If Board of Trade applies, it's not a question of law, it's a question of facts. And in this case, just like in the Board of Trade case, which had a full trial record, it turns on expert testimony. And we have experts that say that all of the factors that were relevant in Board of Trade favor us. They've contradicted us, but it's a classic case where cross-examination and a full hearing of the expert testimony would be needed. Thank you very much. I'd like to reserve as much time as I still have. You will be allowed to do that. Thank you. Counselor, good morning. Good morning, Your Honor. May it please the Court. This appeal is about ISE's failed attempt to evade Illinois Supreme Court precedent. I will address two issues and a third if the Court wishes to get into. First, that the Board of Trade's decision precludes ISE from trading options on these indexes without a license. And secondly, that there is no need for a trial. There is no material issue of fact under the Board of Trade case. Since counsel has rested on the choice of law issues on the brief, so will we unless the Court has questions on that. The remaining time will be Mr. Marks who will address the copyright preemption issue and the OCC issues. With respect to the application of Board of Trade, and this is important also in thinking about the copyright preemption issue because it's important to focus what is the property right in this case. The Board of Trade case, the Supreme Court recognized that index providers have a property interest in their index to control the use made of those indexes as the basis for index-linked securities. Because, the Court found, an index is a creation. It's a creation, an intangible creation, that comes from the judgment and the expertise of the index provider. Namely, how the index provider  How it weights the stocks once they're in the index and how it adjusts those stocks and those weightings over time to make sure the index continues to be a meaningful benchmark of the target market. And this is a dynamic process. The index recipe is always changing and it is for that reason that this is an intangible creation that the Court found was deserving of protection. People trade options or futures on indexes not because of a number but because of what the index represents. Because that index represents something meaningful. Namely, those judgments and that expertise that went into the creation of the index. Let's talk about the protection, though. You say it's entitled to protection and although they're claiming that the copyright law wouldn't protect them for the reasons they've given, if it fell within the copyright protection, it would have protection. If it were under the copyright law, you would look under copyright principles. And Mr. Marks will address in detail why, though, this is not within the copyright law. A copyright law says everything that is not specifically reserved to the federal system is reserved to the state system. And there are some specific tests you have to follow before it's within the copyright law. This satisfies neither of those tests. And therefore, it is, like 90% of the disputes in the world, are going to be resolved by the state courts. And what ISE wants to do here is to take this creation and use it commercially without permission of its owner. And it's going to cause, this is a fundamental difference between the cases that Mr. Deutsch talks about. They're actually going to create a new security. A new instrument will come into being based upon these indexes. So that's a fundamental use of that underlying intellectual property. And the idea of ISE is to encourage index owners to let their property be used against the company that the index providers have licensed to use that property. And the Border Trade case said quite clearly that it is misappropriation to do that. And that was a unanimous decision of this court that it affirmed. And it's important to look at what the policy behind that decision was. It was to encourage the development of new indexes that might be of public benefit. And to do that, to give that incentive for the creation of the future that protect the existing index owner's rights. And all of the plaintiffs in this case and ISE have embraced that decision. All of them have created indexes for use as the basis of financial products. Now, ISE tries to argue that there needs to be a trial here. There does not need to be a trial here. As Justice, as you pointed out, this really is a question of law. There was evidence that was taken in the trial court. But when you look at the Supreme Court's opinion, you realize none of the evidence was driving the decision. The decision was driven by broad policy questions. Whether it is where to strike the balance between promoting innovation and giving access to information. There is no need for detailed fact finding because the board of trade case was fundamentally a policy decision. And as such, it's the law of Illinois and it's binding on all courts. Here's the question I have for you. Say we're writing our decision and hypothetically or just assume that we would go your way. Would we write the decision beginning with misappropriation law in the state of Illinois? Or would we first address whether or not preemption applies? If I were writing the opinion, Your Honor, I would point out that in order to address the copyright preemption issue, I think you do need to start with the board of trade case. You do need to understand and convey to the reading public what the interest was that was protected in the board of trade. This is not a case just about numbers. It's not just copying a number and putting the index. In the Northern District case, the defendant's characterization of what's really going on here is a gross oversimplification. Because once you understand what the interest is and once you explain what the interest is, then it's clear that there's not copyright preemption and it's clear that the board of trade case does apply. With respect to the supposed to change circumstances, of course, sorry to say this has to enter in here because this is a policy-based decision on property rights on which people have relied for the last 25 years and it should not be lightly overturned. And consider what would happen to the policy that board of trade was designed to further, what the Supreme Court was trying to further. Encouraging innovation. Well, if the innovation now, if the property right becomes so uncertain that it depends upon the particular circumstances of a particular index at a particular point in time, it becomes so uncertain, the incentive is vastly diminished and the goal of board of trade can't be achieved. And in any event, I'll just point out briefly, Your Honor, that there's been no demonstration that there really are any change to circumstances. One thing we hear is that the two indexes in question here are just too unbeatable. Well, that isn't what the board of trade case was about. The board of trade case wasn't about preserving the ability of people to be able to match existing index. It was designed to encourage future indexes. And let me just throw out something. There's recently, very recently, I think it was the fact of July 1, the state of Illinois, our Supreme Court allowed a public domain citation system which allows for public use of every decision from the appellate court and the Supreme Court. And prior to that, it was proprietary citation information. If you used any Northeast Second or even the Illinois app or Illinois Second, those were ownership rights by West Publication. And it wasn't until this new citation system came about that became a public domain. Now, are you saying that that's sort of indexing that or the something similar to that should be developed by ISC to allow them to use what or prevent or force them to create their own indexing system? Absolutely, Your Honor, because the board of trade cases, the Supreme Court recognized there are an infinite number of ways that you could devise an index. Some may be successful. Others may not be successful. The court was not trying to guarantee anybody's success, but it was saying there are lots of ways you can do that. And if ISC has the better way to build a mousetrap, that's what they should be doing rather than just saying, I need to have your property in order to compete with you. That's just not the way we do things in this country. Lastly, Your Honor, I'll just address briefly the so-called public harm that ISC has developed. They say there's a public harm here because exclusive indexes cost people more money. If you allow exclusive licenses, it costs people more money to invest in these things. First thing I'd point out is the focus on exclusive licenses, and this is the entire point, this case is not about whether exclusive licenses are a good or bad choice for index providers. It's about whether the index providers have any property right that they can claim. And therefore, exclusivity is not the issue. And they have offered no evidence at all that there is any adverse public harm that comes from recognizing a property interest that the index providers have in their index. And in any event, the Supreme Court already balanced public harm when it said that it considered the possibility of any detriment to the public which might result from our holding and concluded that it was outweighed by the public benefit in this case. Your Honor, at this point, unless you have further questions, I think we would prefer to have the rest of our time devoted to Mr. Marks addressing the copyright preemption issue. Thank you. Thank you. May it please the Court, my name is Benjamin Marks and I represent the McGraw-Hill Companies and its standard enforced subsidiary. And as Mr. Dengel mentioned, I'll be responding to ICE's contention that the state law claims here are preempted by federal copyright law. And that is the dispositive question, isn't it? Whether preemption exists or doesn't exist. I think that is a dispositive question, Your Honor. There's no question about it. And I see like to focus on Section 301A in which Congress established a two-part test for determining whether or not a state law claim is preempted. But I see like to ignore the savings clause in Section 301B of the Copyright Act, which makes clear that state law claim, that state law, state law prohibiting misappropriation and unfair competition comfortably coexist with the Copyright Act when both prongs of the two-prong test are not met. And ISE, I think incorrectly, suggests that somehow it's our burden. Copyright preemption is an affirmative defense. ISE bears the burden of establishing both prongs of the preemption test. Both the Northern District of Illinois and the Circuit Court held that ISE established neither of the two prongs. Five different state and federal courts have already considered ISE's copyright preemption arguments in the winding course of this litigation. Not one has been persuaded, and there's no reason for this Court to withdraw. What about the 9X case that is on all fours? It is certainly not on all fours, not remotely. It didn't involve stock indexes. It didn't involve proprietary interest in stock indexes as recognized in the Board of Trade. What that case involved was a futures exchange that was offering futures on oil and gas commodities in which no intellectual property adheres in the commodity. So in terms of the interest that underlies the option contract, instead of having an index, you had oil or gas. And what the futures exchange asserted there, since it didn't have any proprietary rights in the commodity itself, was that somehow they owned a copyright interest in the settlement values that were used to settle the contracts, and they asserted that right, an unmeritorious claim against a rival exchange that was copying their settlement values in that case. The analogy would be to a stock exchange like the New York Stock Exchange that offers trading in Apple stock, telling ISE they can't offer options in Apple stock because somehow the price of Apple on the New York Exchange is proprietary to the New York Exchange. That's not what we're talking about here. What about their claim that all the information in the indexes is public information already available? Well, there are a couple of different aspects of that that I would like to unpack. The first is whether the question as to whether or not the index numbers are published at any particular moment in time. As a snapshot in time, it is true that you can go on the Internet and find a report of what the value is, what the number is at any time. It changes constantly throughout the trading day when Mr. Goyd refers to the index as being fixed. It's precisely because they move and index creators are  do that. It's true that the snapshot values at any one moment in time are available, but our claims aren't addressed to copying those snapshot values or even republishing those snapshot values to someone else. What distinguishes this case from the body of state copyright claims that are preempted under the Copyright Act is this is not about copying the numbers or     clear to the user that we have a right to use products to offer trading in this. That's systematic and ongoing use that depends on our ongoing maintenance and all of that. If all that was done  all OCC were doing were copying down the numbers and disseminating the numbers that might fall within the equivalency prong. The equivalency prong makes clear that the numbers    copied down the numbers that are being disseminated to the user that they might be using the index as the basis of the new securities rules. It simply trivializes the claims to suggest that what we're complaining about here is somebody copying down a number off a website or even telling somebody else what the number is. I suspect that people email each other the value of the S&P 500 every day. That's not enough to give rise to a claim from misappropriation under board of trade. And it's not about the republication of information, but the use of our indexes as the commodity. Instead of oil or gas, they're using the index. That's what they're building their trading product off of. And we believe it's persuasive authority. We believe it's       two cases. One is the case of the S&P 500 and the case of the S&P 500 and the  the S&P 500. And       We believe it's highly persuasive authority. We believe it's highly persuasive authority. We believe it's highly persuasive authority. We believe it's  persuasive authority. And we believe it's highly persuasive authority. And the S&P 500 and the S&P 500 and the S&P 500 and the S&P 500 and the S&P 500 and the S&P   the S&P 500 and the S&P 500 and the S&P 500 and the S&P 500 and the S&P the S&P      and the S&P 500 and the S&P 500 and the S&P 500 and the S&P 500 and the S&P 500       500 and the S&P but have a have G have a have have had a have a S the S&P S & P   P S & P S & the F F S F P the the the the S the S the S the S N N S N